The opinion of the Court was afterward drawn up by
Parker C. J.
Considering the unfortunate and somewhat singular course of the controversy upon this policy, and the accumulated loss which must inevitably fall upon the unsuccessful party, we regret being obliged to decide it upon narrower grounds than the course of the argument and the expectations of the parties would seem to require. But the jury having specifically returned one fact as found by them, and there being no report of the evidence, or motion to set aside the verdict as against evidence, in regard to that fact, we think it decisive of the cause ; and whatever might be our opinions upon several other points which may have been raised at the trial, or adjudicated upon in another court, we should be obliged, at last, to settle ourselves down upon this point, and therefore it will not be useful to speculate upon the others.
The mode of computation taken by the jury to raise the expense of repairing up to fifty per cent of the value of the vessel, particularly in assuming a large sum arbitrarily, for the straining and weakening of the ship, after all expenses of repairs were allowed, is of very questionable character, and has been expressly disavowed in the respectable court of a neighbouring State. Sage v. Middletown Ins. Co. 1 Connect. R. 239. Indeed we cannot but think there has been a straining of the cause, as well as of the vessel, in order to charge the underwriter ; but of this, for the reason before given, we say no more.
That the ship, at the time of the offer to abandon, was in a state of peril to justify that offer, cannot be doubted.[1] She was upon the rocks, and whether she could be got off or not *263 was altogether uncertain. Subsequent events must determine whether the loss was then total or not.
. The mete stranding, however perilous, is not of itself a total loss, for the vessel may be relieved and the damage may be small.[1] The assured may, if he please, take measures to get her off, and repair her at the expense of the underwriter in the form of a partial loss, or he may leave her to her fate, trusting to the proof that may entitle him to insist upon his abandonment and indemnity as for a total loss. The underwriter is not, in such circumstances, obliged to accept the offer to abandon ; he also may take the chance of the facts as they may appear, and he may, we think, though this right has been questioned, take her into his possession and repair her, the assured refusing to do it, and if he can do this at an expense less than half her value, he may restore her to the assured,, and thus avoid paying for a total loss.[2] It is asked, who has the property of the vessel, and the risk in case she be destroyed by some cause not within the policy. We say the assured, if it turn out that the loss from the peril insured against was not total.
But the underwriter has his duties, as well as his rights ; if he take the vessel into his possession to repair her, he must do it as expeditiously as possible, in order that the voyage, if it be not completed, may not be destroyed. If he delay the repairs beyond a reasonable time, he forfeits his right to return the ship, and must be considered as taking her to himself under the offer to abandon. This principle cannot well be contested; without it, the underwriter may keep the assured entirely uncertain in regard to his rights and interests, and put his property in jeopardy. The right of the insurer to take into his custody the vessel of the assured without his consent, except under the abandonment, cannot exist without the correlative duty to keep her as short a time as possible under the circumstances in which she may ne placed.
There are no authorities upon this point, nor indeed upon the right of the insurer to take the vessel in order to repair her ; *264 but the principle rests upon the very nature of the law of m surance) which is a fair and honest indemnity for loss.
Now the jury have in this case explicitly found, that the vessel was not repaired and offered to be restored in a reasonable time ; that is, that the underwriter kept her from the assured longer than was necessary to put her in a navigable state so that she could perform her voyage, or be as safe and sound as she was before her state of peril. We know not the evidence by which they came to this conclusion, but it being in legal contemplation the fact, we think thereby they made the vessel their own by a constructive acceptance of the abandonment.
If we were to decide otherwise, we should declare the law to he, that when a vessel has incurred a peril which justifies an offer to abandon, the underwriter may take her into his possession and keep her as long as he pleases, and then restore her and avoid paying a total loss ; which cannot be the law

 Imminent danger of a total loss is no ground for an abandonment. Thus if a ship, being damaged, is abandoned on her way to a port to repair, the abandonment will be void, if the vessel arrives and is repaired for less than half her value. Hall v. Franklin Ins. Co. 9 Pick. 466.

 The submersion of a ship insured, is or is not a total loss, according to the circumstances. Sewallv. United States Ins. Co. 11 Pick. 90.

 See 2 Phillips on Ins. 321; Commonwealh Ins. Co. v. Chase, 20 Pick. 142.