# Wilson v. Insurance Company of North America

598

Before Shughart, P. J. and Weidner, J.

*Mark E. Garber*, for plaintiff.

*James D. Flower*, for defendant.

WEIDNER, J., April 9, 1965.—This is an action in assumpsit based on an insurance policy entered into between plaintiff, J. Frank Wilson, and defendant, Insurance Company of North America. The insurance policy, as far as material here, covered the hull and machinery of plaintiff's Chris-Craft Express Cruiser named "Land Shy."

On March 5, 1962, the "Land Shy" was damaged by a severe storm and tide, described as a hurricane, carrying it against other boats and a steel building, then depositing it on railroad tracks, while in dry dock at Lewes Boat Yard, Lewes, Delaware. Plaintiff instituted this action when plaintiff and defendant could not agree upon the amount of damages sustained by plaintiff. The case was tried before a jury and the jury returned a verdict in favor of plaintiff against defendant in the sum of $5,758.01. In addition, "special findings by the jury" were returned as follows:

1. Was the boat fully repaired or partially repaired? Answer: Partially repaired.

2. If you find the boat was partially repaired, answer the following questions:

a. What was the fair market value of the boat immediately before the boat was damaged? Answer: $9,000.

b. What was the fair market value of the boat immediately after repairs were done?

Answer: $5,500.

c. What would have been the cost of repairing the whole damage, including the cost of what was actually done?

Answer: $6,761.31.

Defendant filed a motion for new trial. The reasons stated in support of the motion were that the verdict was against the law; the verdict was against the weight of the evidence; and the verdict was excessive. Additional reasons for new trial were filed to the effect that the court erred in failing to charge the jury properly and in failing to affirm certain of defendant's requested points for charge.

Plaintiff's theory of the case was that the craft was severely damaged and was only partially repaired for the sum of $1,763.31, and plaintiff claimed further for additional repairs in the amount of $30 to $40, and for depreciation. The depreciation is claimed on the basis that complete repairs would be impractical and prohibitive in cost.

Defendant contended that the vessel was completely repaired and that the costs of the repairs would be the measure of damages, but in the alternative, if not completely repaired, the further measure of damages would be the cost of completion of the additional repairs in the amount of $29, without any allowance for depreciation.

There was considerable testimony introduced on both sides, much of it conflicting and contradictory.

Plaintiff testified that repairs, and temporary repairs had been made, but that the boat had been twisted throughout and strained and otherwise had unrepaired damage, the cost of complete repairs being prohibitive. He testified that there was severe strain, the joints did not fit after the damage, and that the joints had

pulled open. He further testified that the open joints were gaping, and that water came in. He further pointed out the gaping and buckling to the jury on photographic exhibits.

Plaintiff's witness, Thompson, testified that the boat was strained and he would be unable to repair it unless he took the whole side and bottom out of the boat. He testified this was due to the straining. He further testified that the boat had a value of $9,000 before the damage and a value after repairs in the amount of $5,500. He further testified that the cost of further repairs to the plywood would be $30 to $40, and the cost for completely repairing the boat and removing the strain, which was not done, would be in the amount of $5,000, for a total repair cost of $6,761.

For defendant, witness McGuiness testified that the boat had been repaired with the exception of one bruise on the inside of the boat, and that there was no strain or twist evidenced.

Defendant's witness, Parsons, testified that the boat had been repaired except in three areas and that to complete the repairs would cost $29, and further, that there was no strain or twist evidenced.

First, defendant contends that the verdict is against the law and has cited numerous cases for the proposition that, in case of a partial loss, the cost of repairs, when made, is the extent of the insurer's liability. This proposition is correct. But that simple rule does not cover the instant case. The instant case involves further considerations, namely, unrepaired damage and depreciation.

All witnesses agreed that there is unrepaired damage to the plywood, in at least one place, which could be corrected economically. The only disagreement is as to the cost of the additional repairs. Plaintiff's witness, Thompson, estimated that cost at $30 to $40; while defendant's witness, Parsons, estimated the cost

at $29. The jury accepted defendant's witness's figure of $29.

On the matter of depreciation, the testimony is in conflict but the item must be considered.

The trial judge instructed the jury as follows:

"Where a ship is damaged but is not totally lost, the measure of damages is as follows: Where the ship has been fully repaired, the assured is entitled to the reasonable cost of repairs. Secondly, where the ship has been only partially repaired, the assured is entitled to the reasonable cost of such repairs, and also to be indemnified for the reasonable depreciation, if any, arising from the unrepaired damage, provided that the aggregate amount shall not exceed the cost of repairing the whole damage." Further, the trial judge charged the jury as follows:

"Now, in the case of marine damage, the measure of damages is essentially the same, but we don't go ahead and jump to the conclusion that the yacht has been depreciated simply because it has been damaged . . . Secondly, where the ship has been only partially repaired, the assured is entitled to the reasonable cost of such repairs, and also to be indemnified for the reasonable depreciation, if any, arising from the unrepaired damage, provided that the aggregate amount shall not exceed the cost of repairing the whole damage. . . . If it's not possible to put the ship back in the same condition that it was before the damage occurred, then the ship has been additionally damaged in the sense that there are some repairs that cannot be made, or, for practical reasons, have not been made because of the extent of those repairs, and therefore, under that situation, the person who owns the ship is entitled to have something for depreciation which occurs because the damages have not been completely repaired."

By analysis of the jury's verdict, the conclusion is reached that they found as a fact that the boat was

not fully repaired. This is also supported by their special finding No. 1 where they found as a fact that the boat had been partially repaired.

Therefore, the rule as to a partially repaired ship is applicable and the instructions of the Court on the measure of damages is in accordance with the law. Further, the verdict of the jury is in accordance with those instructions and not against the law.

Further support of this legal principle is found in 6 Appleman Insurance Law and Practice §3800, at page 135, where two Massachusetts cases are cited, the latter holding:

". . . where a vessel receives a strain irremediable without rebuilding her, the insurer is liable for the diminution of her value, in addition to the expense of repairs made, even though the vessel is made seaworthy by such repairs and is given the same valuation as before the injury."

In the first Massachusetts case, Peele v. The Suffolk Insurance Co., 24 Mass. 254, the court held:

"In determining the amount of damage caused by the perils of the sea to a ship insured, it seems the jury will not be justified in adding to the expenses of the repairs, a sum 'for damage of leak and straining of the vessel'."

In the case of Giles v. The Eagle Insurance Co., 43 Mass. 140, a later case, the first Massachusetts case was cited and distinguished. In the Giles case, the schooner Good Hope was blown ashore and became imbedded among rocks. After repairs, she was made seaworthy but there was testimony that the injury from the strain or hogging could not be perfectly repaired except by rebuilding her. Plaintiffs directed the carpenters to repair the vessel to make her seaworthy, but to do it economically. There was testimony that the hogging diminished the value of the vessel from between $800 to $1,000, and the jury returned a verdict

for $835. On appeal, the court sustained plaintiff because the damage was actual, visible and tangible. The court distinguished the two cases in that jury found there was damage that was actual, visible and tangible and compensated plaintiff therefor.

The jury found as a fact that the "Land Shy" was only partially repaired, and that there was reasonable depreciation, and that the aggregate amount of the reasonable cost of repairs and depreciation did not exceed the cost of repairing the whole damage. The instructions of the trial judge were correct and the jury displayed an unusual understanding of them and reached an intelligent and mathematically correct verdict.

Considering all the evidence, and assessing its weight, it cannot be said that the verdict of the jury is against the weight of the evidence. Solely by considering only the evidence favorable to defendant, and disregarding that favorable to plaintiff, could such a conclusion be reached.

The testimony was conflicting and contradictory, and therefore, it was the function, and the duty, of the jury to determine which of the contradicting statements is more credible, — in the absence of a possible reconciliation of the controverting evidence: Battistone v. Benedetti, 385 Pa. 163.

Defendant contends that "the only evidence that all the damage was not repaired was submitted by the defendant," and "the only evidence of the cost of completing this repair was submitted by the defendant and was in the amount of $29." This completely disregards the testimony of witness Thompson to the effect that the hull was "chewed up" and to repair it by putting on a fender would cost $30 to $40, since, if repaired otherwise, it would not stay. Further, witness Thompson testified that the boat was strained. It also disregards the testimony of the plaintiff, Wilson, who

testified to, and pointed out to the jury on exhibits, the gaping and buckling joints where water came in. The jury could not believe both sides and they chose to believe plaintiff.

Under the law and the evidence, the verdict was not excessive. Defendant's position here ignores the findings of the jury and the basis for those findings on the evidence.

The jury first found that the boat was partially repaired. Then they further found, in their special findings, that the cost of repairing the whole damage was $6,761.31. This is exactly what plaintiff's witness, Thompson, testified.

Further, defendant contends that this results in a double payment. However, this position overlooks the fact that the jury did not award damages in the amount of $6,761.31 based on repairs in the amount of $1,761.-31 and completion of repairs in the amount of $5,000 for removing and replacing the sides and bottom. They merely used the figure of $6,761.31 as the amount necessary for full repairs. This was necessary in determining whether the aggregate amount awarded for repairs made, plus depreciation, exceeded the cost of repairing the whole damage — not as basis for the monetary amount awarded. Considering witness Thompson's testimony in its entirety, the jury was warranted in accepting and using the figure of $6,761.-31. Since it was not the basis of their monetary award, there is no duplication.

Defendant's requested points no. 1 and 2 were properly refused, as they were covered in the general charge: Woldow v. Dever, 374 Pa. 370, at 378. Defendant's requested point no. 1 was as follows:

"Where a vessel has been repaired the assured is entitled to the reasonable cost of such repairs as are necessitated by the injury."

Defendant's requested point no. 2 was as follows:

"Upon a partial loss on a valued policy on a vessel the cost of repairs when made is the measure of indemnity against the insurer."

The court charged the jury as follows:

"Where the ship has been fully repaired the assured is entitled to the reasonable cost of repairs." ". . . If it is possible to put the ship back into the same condition it was before it was injured, then all that can be recovered is the cost of doing that." "Now, of course, if there were any of those repairs that weren't made necessary because of the damages to the boat, then the plaintiff would not be entitled to those, . . ."

The charge of the court covered these points in clear and understandable language.

Points no. 6 and 7 were properly refused for the same reason, as they were covered in the general charge. Defendant's point no. 6 was as follows:

"The measure of liability in this case is the cost of such repairs as will put the yacht in the same state of efficiency as she was in before the accident."

Defendant's point no. 7 was as follows:

"The defendant is not liable for such repairs as may be necessary to put the yacht in a state of cosmetic perfection."

The court charged as follows:

"What it means, in essence, is this, if it is possible to put the ship back in the same condition it was before it was injured, then all that can be recovered is the cost of doing that."

"Fully repaired means, put in substantially the same condition that the boat was before the injuries happened to it. If it is not put in substantially the same condition it was before the injury, then it was partially repaired. Now, I am using the word substantially because if you find that this boat was repaired in every respect and put in the same condition it was before, except for a few scratches, then you should find that

it was substantially repaired, and where a ship has been fully repaired, which is what it has been when it is substantially repaired, then the plaintiff would only be entitled to the reasonable cost of the repairs that had been made, plus the few little repairs that might be necessary to fix up the scratches."

Further, the court charged:

"Now, from that point on your problem arises, and that's to determine whether or not this boat was fully repaired by being placed in substantially the same shape that it was before it was injured. If you should find that it was fully repaired, then you could also add to the verdict for the plaintiff, the cost of making the small repairs still needed by admission of the defendant. If you should find that it was not fully repaired in the sense that it was not put in substantially the same condition as it was before, then you should find it was partially repaired. . . ."

Those instructions completely and fully covered the matter, and to use such terms as "cosmetic perfection" would require further explanation and description by the trial judge in such language as was actually used previously by the court in the charge.

Defendant's point no. 8 was properly refused. Defendant's requested point no. 8 was as follows:

"From the repair bill must be deducted one-third of the cost of the new canvas top listed on the repair bill at $250.00."

A "canvas navy top" is not a protective cover of fabric but an integral part of the boat. Its description is that of a folding top, fastened to the boat by bolts instead of a hard top. On many inboard craft, the whole hull and deck are covered with fibre glass cloth coated with epoxy. The insurer could as well claim the average clause exemption applied to such fabric, although it is a part of the boat.

To hold the average clause applying in the instant case, we would have to change the policy from

"Except in respect to sails and protective covers of fabric," to read:

"Except in respect to sails, tops and protective covers of fabric."

Next, defendant contends that the trial judge erred in charging the jury that it would cost $5,000, in addition to the repairs already made, to repair the boat. As previously held, this was not error. Witness Thompson did not say "$4,000 to $5,000," but "$4,000, $5,000," not in the alternative, but $5,000 being the maximum. This is supported by his later testimony.

The figure was not used as an item of damage but merely to determine whether repairs made and depreciation exceeded the cost of repairing the whole damage. Even if the figure $4,000 had been used, the result would have been the same, under the evidence. Further, after the trial judge's original use of the figure in his charge, plaintiff's counsel asked for further instructions on this point, using the $5,000 figure. The court gave such further instructions with the $5,000 figure, and no objection or request for correction was made by defendant's counsel.

Defendant's requested points nos. 11 and 16 were properly refused as inapplicable.

Requested point no. 11 was:

"Under the law and the evidence the plaintiff is not entitled to any award at your hands for depreciation to his yacht."

Requested point no. 16 was:

"The amount, if any, of depreciation is a limiting factor in that the cost of any additional repairs may not be awarded unless the cost of those repairs do not exceed the depreciation."

Point no. 11 ruled out depreciation as a consideration, and this was a matter for the jury and not to be

precluded by instructions of the court. The requested point no. 16 was inapplicable and the matter was covered under the general charge and adequately.

Defendant next objects to the trial judge's comparison of automobile insurance and marine insurance. The trial judge clearly distinguished the two, pointing out the differences and following the law of marine insurance. In this, there was no error.

In defendant's additional reasons for motion for new trial, it is set out that the court erred in failing to affirm defendant's point for charge no. 13, but this reason was apparently abandoned in defendant's brief and at argument. The refusal of this point was not error as, again, we would have to reword the policy of insurance to sustain defendant's position and delete the expressed provision: "The reasonable cost whereof this company will pay."

Defendant's motion for new trial must be overruled.

ORDER OF COURT

And now, April 9, 1965, for the reasons given, defendant's motion for new trial is overruled.